UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| | ) M.J. No. 22-5431-JGD |
| v. | ) |
| | ) |
| KURT LEO ROBERSON, | ) |
| | ) |
| Defendant | ) |
| | ) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan P. Glynn, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since October 2015. I currently am assigned to the Financial Investigations Team of the New England Field Division in Boston, Massachusetts, where I have been assigned since April 2021.

2. I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic Agent Academy and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and the court-authorized interception of communications. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become

familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4.  I submit this affidavit in support of a Criminal Complaint charging Kurt Leo ROBERSON ("ROBERSON") with attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846.

5.  I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by DEA agents and other federal, state, and local law enforcement agents.

6.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that ROBERSON has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

7.  During October 2022, agents began receiving information about ROBERSON from a cooperating witness (the "CW"). The CW has been cooperating with the DEA since October 2022. The CW is cooperating in the hopes of receiving leniency with respect to charging and sentencing related to a significant drug seizure from him. The CW is also cooperating in the hopes of receiving immigration benefits. The CW has a criminal history that includes convictions for motor vehicle offenses and illegal reentry of a deported alien. Information provided by the CW has been corroborated by recordings made during the course of this investigation, as set forth in part below. Information provided by the CW is believed to be reliable.

8.  In October 2022, the CW identified ROBERSON as a multi-kilogram cocaine trafficker operating in and around Brockton, Massachusetts. On October 18, 2022, the CW had an audio- and video-recorded meeting with ROBERSON that was surveilled and monitored by agents.

During the meeting, the CW and ROBERSON discussed the CW's providing ROBERSON with five kilograms of cocaine ("five") in exchange for $100,000 ("100 racks"). ROBERSON and the CW discussed the fact that the CW's suppliers were requiring him to collect 20% payment prior to delivery of the drugs ("I will give you money up front, right?"). ROBERSON and the CW then discussed per-kilogram prices of cocaine, and ROBERSON said that he could not pay $23,500 or $24,000 per kilogram, and that even $23,000 was difficult. The CW offered to try to negotiate a price of $22,000 or $22,500 per kilogram for ROBERSON.

9. Within in the past week, the CW and ROBERSON arranged to meet for ROBERSON to give the CW payment for four kilograms of cocaine, with the expectation of receiving four additional kilograms on credit. On November 16, 2022, agents met with the CW at a staging location and searched the CW and the CW's vehicle for currency or contraband with negative results. Agents provided the CW with an audio- and video-recording device and transmitter. Thereafter, the CW was surveilled to Work Out World at 75 Campanelli Industrial Drive in Brockton. There, in the parking lot outside of the gym, ROBERSON gave the CW a blue backpack containing $84,830. The currency was bundled and concealed in multiple plastic shopping bags within the backpack. When ROBERSON gave the CW the backpack, he stated that it contained "85," which I understood to mean $85,000. The CW stated that it would take a day or two to obtain the kilograms and confirmed that ROBERSON would receive "eight." After the CW and ROBERSON parted ways, the CW was surveilled to a secondary location where the CW gave agents the blue backpack received from ROBERSON. Agents searched the CW and the CW's vehicle again for contraband or currency with negative results.

10. On November 17, 2022, the CW and ROBERSON arranged to meet on the morning of November 18, 2022, for ROBERSON to pay the CW the $5,170 he owed the CW, and for the

CW to deliver the kilograms of cocaine to ROBERSON. On November 18, 2022, agents met with the CW and searched the CW and the CW's car for currency or contraband with negative results. Agents equipped the CW with an audio- and video-recording device and transmitter. Agents also provided the CW with an open-top shopping bag containing four brick-shaped objects wrapped in black electrical tape and contained inside of heat-sealed plastic bags. Based on my training and experience, each of these brick-shaped objects is consistent with the appearance of two kilograms of cocaine packaged for wholesale distribution.

11. The CW was then surveilled to a Residence Inn at 2020 Pleasant Street, Bridgewater, Massachusetts. There, the CW met with ROBERSON in the back stairwell of the hotel. The CW asked if ROBERSON had "the five" for the CW. ROBERSON said that he did but did not want to give the money to the CW at that location because there were cameras there. ROBERSON said he would give the CW the additional $5,000 later that day. The CW then placed a bag on the floor, moved t-shirts to the side to show the contents of the bag to ROBERSON, and stated, "Here is the stuff." The CW told ROBERSON to "check it" and report back to the CW. ROBERSON picked up the bag and walked outside. At that time, ROBERSON was arrested by agents outside the hotel. When ROBERSON was arrested, agents seized approximately $5,481 from his pocket.

12. Based on my training and experience, possession of eight kilograms of cocaine is consistent with possession with intent to distribute cocaine rather than with possession for personal use.

//

//

//

13. Based upon the foregoing, there is probable cause to believe that on November 18, 2022, Kurt Leo ROBERSON did attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846.

_____
Ryan P. Glynn
Special Agent
Drug Enforcement Administration

Sworn to by telephone in accordance with Fed. R. Crim. Pr. 4.1 on November 18, 2022,

_____
HON. JUDITH G. DEIN
United States Magistrate Judge
District of Massachusetts